# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | No. 89-CR-21-CJW-MAR |
| Plaintiff, | | |
| vs. | | **MEMORANDUM OPINION** |
| BARTON RAY CRANDALL, | | **AND ORDER** |
| Defendant. | | |

---

## TABLE OF CONTENTS

I.    PROCEDURAL HISTORY ................................................................. 2

II.   RELEVANT BACKGROUND ........................................................... 4

III.  COMPASSIONATE RELEASE PROVISIONS ...................................... 7

IV.   ANALYSIS.................................................................................11

    A.    Exhaustion..........................................................................11

    B.    Unusually Long Sentence .......................................................12

    C.    Section 1B1.13(b)(5)—Other Reasons .......................................18

V.    CONCLUSION ............................................................................20

Case 1:89-cr-00021-CJW-MAR   Document 236   Filed 03/05/24   Page 1 of 22

This matter is before the Court on defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), supported by a brief and exhibits. (Docs. 213 & 214). Defendant is represented by counsel. The government filed a timely resistance. (Doc. 220). Defendant filed a timely reply. (Doc. 228). Neither party requested argument, but the Court scheduled oral argument finding it appropriate to allow the parties to fully address the important issues involved in resolving this motion. On February 26, 2024, the Court heard oral argument. (Docs. 229 & 235). For the following reasons, the Court **denies** defendant's motion.

## I.    *PROCEDURAL HISTORY*

On April 2, 1990, the Court sentenced defendant to 562 months' imprisonment followed by five years' supervised release on his convictions for two counts of armed bank robbery (Counts 1 & 2), two counts of using or carrying a shotgun during a crime of violence (Counts 3 & 4), one count of possession of a firearm as a felon (Count 5), one count of possessing an unregistered sawed-off shotgun (Count 6), and one count of conspiracy to commit armed bank robbery, to use a firearm during the commission of a violent felony, to possess a firearm by a convicted felon and to possess an unregistered sawed-off shotgun (Count 7). (Doc. 58).

On November 3, 2005, the Court reduced defendant's sentence by three years for an unrelated reason. (Doc. 150).

On September 16, 2020, defendant filed a motion for compassionate release, arguing that (1) his age and underlying health conditions compel his release during the COVID-19 Pandemic, and (2) his term of incarceration would be shorter if he were sentenced today in light of changes in the law. (Doc. 177). On December 3, 2020, the Court denied his motion. (Doc. 191). Defendant appealed, and on February 9, 2022, the Eighth Circuit Court of Appeals affirmed this Court's ruling. (Doc. 201).

In particular as it relates to defendant's current motion, the Eighth Circuit stated:

Congress opted in 2018 to assign a new, less substantial, mandatory punishment for multiple violations of § 924(c) going forward, but it did not declare that the previous Congress—decades earlier—prescribed an inappropriate punishment under the circumstances that confronted that legislative body. To the contrary, the more recent Congress declined to change the law retroactively and left existing sentences in place.

Congress from time to time prospectively increases or decreases existing criminal penalties, so that circumstance may not be "extraordinary" as an empirical matter. Even if it were, the circumstance here would not be a "compelling" reason to reduce a sentence. The new Congress did not disapprove of the penalties established by the prior Congress for a different era. The legislative action in 2018 is comparable to the decision of a sentencing judge in 2018 to impose a lesser sentence than a predecessor imposed in 1990 for the same offense. Neither circumstance is a sufficient ground to support a reduction of a previously imposed sentence under § 3582(c)(1)(A). The views of a present-day Congress, like those of a present-day sentencing judge, about the appropriate punishment for a present-day offense do not establish an "extraordinary and compelling reason" for reducing a sentence imposed years ago. The compassionate release statute is not a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy. . . . Accordingly, we conclude that a non-retroactive change in law, whether offered alone or in combination with other factors, cannot contribute to a finding of "extraordinary and compelling reasons" for a reduction in sentence under § 3582(c)(1)(A).

(*Id.*, at 6-8).

Defendant is currently incarcerated at the Butner Medium I FCI with an estimated release date of May 10, 2027.[1]

---

[1] *Find an Inmate*, BOP, https://www.bop.gov/inmateloc.

3

## II.    RELEVANT BACKGROUND[2]

In early 1989, defendant and R.D. conspired to rob two banks.  (Doc. 168, at 5); *see also United States v. Crandall*, No. CR89-0021, 1999 WL 33656814, at *1 (N.D. Iowa Jan. 1999).  Defendant initiated the conspiracy and recruited R.D. in the scheme. (Doc. 168, at 5).  The first robbery occurred at Norwest Bank in Newhall, Iowa on April 25, 1989.  *Crandall*, 1999 WL 33656814, at *1.  In preparation, defendant familiarized himself with the bank's layout and security cameras.  (Doc. 168, at 6).  Defendant also borrowed a shotgun and watched as R.D. sawed it off.  (*Id.*, at 5–6).  The shotgun was loaded with five rounds of buckshot, although defendant suggested using slug rounds. (*Id.*, at 6).[3]

While in route to the robbery, defendant and R.D. discussed who should hold the shotgun and whether they were willing to shoot someone if needed.  (*Id.*).  It was decided that R.D. should hold the shotgun and default to firing it into the air.  (*Id.*).  Upon arriving at the bank, defendant parked the car in an alley, entered the building, announced the robbery, and ordered everyone to the floor.  (*Id.*, at 6–7).  Defendant took all the cash from the tellers' drawers and then demanded to know where the rest of the money was.  (*Id.*, at 7).  Defendant instructed a teller to get up, go to the bank's safe, and fill a bag with cash.  (*Id.*).  When the teller returned with the bag, defendant took the money and left the bank with R.D.  (*Id.*).  The robbery lasted approximately one minute.  (*Id.*). Although no specific amount is stated, the robbery yielded several thousand dollars. (*Id.*).  Defendant and R.D. later disposed of the shotgun by throwing it in a creek.  (*Id.*).

The second robbery occurred at Atkins Savings Bank and Trust in Atkins, Iowa on July 19, 1989.  *Crandall*, 1999 WL 33656814, at *1.  Defendant and R.D. agreed to

---

[2] Aside from defendant's final presentence investigation report and Judgment, filings prior to June 2005 appear on the online docket but are not accessible.

[3] It is not clear in the PSR who loaded the shotgun, but the implication is that R.D. did so.

rob a second bank after R.D.'s mechanic garage was burglarized. (*Id.*, at 8). The pair acquired a new shotgun from a pawn shop, and R.D. again sawed it off. (*Id.*, at 9). The shotgun was again loaded with five rounds of buck shot. (*Id.*). Like the first robbery, defendant parked the car in an alley behind the bank, entered the building, ordered the tellers to the floor, demanded that one teller retrieve money from the safe, and left after obtaining the money. (*Id.*). The second robbery yielded around $10,000. (*Id.*).

Following this robbery, defendant laundered his share of the money and destroyed potential evidence. (*Id.*, at 10). A month later, defendant began threatening R.D. because defendant was worried R.D. might provide information to police. (*Id.*, at 11). R.D. ultimately did provide information to police about the two robberies. (*Id.*).

On September 27, 1989, a grand jury issued an eight-count Indictment charging defendant with two counts of bank robbery ("Count 1" and "Count 2"), two counts of using and carrying a firearm during and in relation to a bank robbery ("Count 3" and "Count 4"), one count of being a felon in possession of a firearm ("Count 5"), one count of possessing a firearm not registered to him ("Count 6"), one count of conspiracy to commit armed bank robbery ("Count 7"), and one count of possession of marijuana ("Count 8"). (Doc. 1); *see also Crandall*, 1999 WL 33656814, at *1. After Count 8 was severed out, defendant pled guilty to Count 5 and a jury found him guilty of Counts 1, 2, 3, 4, 6, and 7. *Crandall*, 1999 WL 33656814, at *1.

On March 28, 1990, the United States Probation Office filed defendant's final presentence investigation report. (Doc. 168). Defendant was, at that time, 26 years old and residing in Cedar Rapids, Iowa. (*Id.*, at 1–2). Defendant's mother died of a cerebral hemorrhage when defendant was 15. (*Id.*, at 20–21). Defendant's father, who was often away due to work, lamented that defendant was "often left to take care of himself" as a result. (*Id.*, at 21). By his senior year of high school, defendant was living with a friend. (*Id.*, at 20). Although defendant graduated high school, staff noted that he was

significantly affected by his mother's death and exhibited deceitful behavior. (*Id.*, at 23). Defendant was briefly married but had no children. (*Id.*, at 20–21). Defendant's work history was episodic. (*Id.*, at 23–24). Notably, he was terminated on several occasions for providing false statements or allegedly engaging in fraudulent conduct. (*Id.*). Defendant had recently found some success as a car salesman. (*Id.*). Aside from some neck, back, and knee pain from prior sporting injuries, defendant was in good physical health. (*Id.*, at 23). As to mental health, defendant was diagnosed with adult antisocial behavioral disorder and possible adjustment disorder. (*Id.*, at 22). It was noted that he began abusing alcohol following his mother's death. (*Id.*). He also abused marijuana and cocaine in the months prior to the instant offense. (*Id.*, at 23). Defendant had previously completed drug treatment once while incarcerated. (*Id.*).

Defendant's criminal history consisted of theft and burglary. In April 1982, defendant was convicted of burglary for stealing a microwave from a friend's home and selling it to his high school teacher. (*Id.*, at 15). In August 1982, defendant was convicted of theft for stealing a motorcycle, stripping it for parts, and abandoning it in a creek. (*Id.*, at 16). In December 1982, defendant was convicted of burglary for stealing three firearms from a friend's house. (*Id.*, at 16–17). Defendant served concurrent sentences for all his 1982 offenses and was paroled in 1984. (*Id.*, at 17). While on parole, it was noted that defendant's employers accused him of theft and dishonesty and that defendant refused to pay any restitution. (*Id.*). Defendant was ultimately discharged from parole in 1987. (*Id.*).

On April 2, 1990, the Court sentenced defendant. (*Id.*, at 1). The Court found defendant's two prior burglary convictions were crimes of violence and, thus, that defendant was a career offender. *See* (Doc. 177-1, at 3). Defendant was in criminal history category VI with a total offense level of 34, yielding an advisory guideline range of imprisonment for Counts 1, 2, 5, 6 & 7 of 262 to 327 months, followed by three to

five years on supervised release. (Doc. 168, at 19). The Court sentenced defendant to 262 months' imprisonment on both Counts 1 and 2, 60 months' imprisonment on Count 3, 240 months' imprisonment on Count 4, 120 months' imprisonment on Count 5, 120 months' imprisonment on Count 6, and 60 months' imprisonment on Count 7. *Crandall*, 1999 WL 33656814, at *1. Counts 1, 2, 5, 6, and 7 were to be served concurrently while, based on the law at the time, Counts 3 and 4 were each to be served consecutively to each other and to all other counts of conviction. *Id.* Thus, defendant's total term of incarceration was 562 months—i.e., 46 years and ten months—followed by five years on supervised release. *See* (Doc. 177-1, at 1). Defendant appealed his sentence but was unsuccessful. *Crandall*, 1999 WL 33656814, at *1. In 2005, defendant's sentenced was reduced to 526 months imprisonment. (Doc. 150).

### III.    COMPASSIONATE RELEASE PROVISIONS

"A federal court generally 'may not modify a term of imprisonment once it has been imposed' [unless] Congress has provided an exception to that rule." *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)); *see United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979). As part of the Sentencing Reform Act of 1984, Title 18, United States Code, Section 3582(c), Congress created two exceptions to this general rule. First, Section 3582(c)(2) authorizes the sentencing court to reduce a term of imprisonment based on a guidelines range subsequently lowered by the Sentencing Commission, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." In Title 28, United States Code, Section 994(u), Congress directed the Commission to "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for [a particular] offense may be reduced." This directive gave the Commission the power "to decide whether and to what extent [Commission] amendments reducing sentences will be given retroactive effect." *Braxton v. United States*, 500 U.S. 344, 348 (1991). "A

7

court's power under § 3582(c)(2) thus depends in the first instance on the Commission's decision not just to amend the Guidelines but to make the amendment retroactive." *Dillon*, 560 U.S. at 826.

Second, Section 3582(c)(1)(A), authorized the sentencing court, upon motion of the Director of the Bureau of Prisons, to reduce a sentence of imprisonment if it finds "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Congress later amended Section 3582(c)(1)(A) to allow a defendant to directly petition a district court for a sentence reduction "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

In Title 28, United States Code, Section 994(t), Congress directed the Commission to define "what should be considered extraordinary and compelling reasons for [a] sentence reduction[.]" In 2006, the Commission promulgated Sentencing Guidelines Section 1B1.13, p.s. As amended in 2016, the policy statement described four categories of reasons that should be considered extraordinary and compelling: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons" "determined by the Director of the [BOP]" to be "extraordinary and compelling" "other than, or in combination with," the reasons described in the other three categories. Sentencing Guidelines App. C Supp., Amend. 799 (Nov. 1, 2016).

In the First Step Act of 2018, Congress amended Section 3582(c)(1)(A) to allow defendants, as well as the BOP itself, to file motions for a sentence reduction. *See* Pub. L. No. 115-391, Tit. VI, § 603(b), 132 Stat. 5194, 5239. As modified, Section 3582(c)(1)(A) now states:

the court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

Shortly after the First Step Act's enactment, the Sentencing Commission lost a quorum of voting members, and remained without a quorum for more than three years. *See* 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). As a consequence, the Commission did not immediately amend the policy statement to account for the First Step Act's procedural change. In the intervening years, nearly every circuit held that the existing policy statement's description of what should be considered "extraordinary and compelling" reasons for a sentence reduction was not applicable to defendant-filed motions. *See United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022) (collecting cases). In the absence of a binding policy statement, the courts of appeals had to construe the plain meaning of the phrase "extraordinary and compelling reasons" as used in Section 3582(c)(1)(A)(i). The majority of circuits considering the question—including the Eighth Circuit—determined that a change in the law, whether considered alone or in combination with other factors, cannot constitute an "extraordinary and compelling" reason for a sentence reduction. *See United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021); *United States v. Jenkins*, 50 F.4th 1185, 1198-1200 (D.C. Cir. 2022); *see also United States v. McMaryion*, No. 21-50450, 2023

WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) (unpublished). Four circuits, in contrast, took the view that a change in the law can serve as a basis for a sentence reduction, but only in combination with other case-specific factors. *Ruvalcaba*, 26 F.4th at 28; *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1097-98 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047-48 (10th Cir. 2021).

In 2022, the Sentencing Commission regained a quorum, and after public notice and comment voted on April 5, 2023, to promulgate amendments to the Guidelines Manual, including to Section 1B1.13's policy statement. 88 Fed. Reg. 28,254, 28,254-28,281 (May 3, 2023); *see also* Sentencing Commission Public Meeting Tr. at 27-82 (Apr. 5, 2023) ("4/5/23 Tr."). The amendments to Section 1B1.13 now renders the policy statement applicable to defendant-filed motions.

In particular, the Sentencing Commission amended Section 1B1.13, moving the list of extraordinary and compelling reasons from the Commentary to the Guidelines itself, with significant changes. Two changes are at issue here:

> (b)(6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

> (c) LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction . . . a change in the law (including an

amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

USSG §1B1.13.

The Sentencing Commission's explanation for Subsection (b)(6) relied on a sentence from the Senate Report to conclude that Section 3582(c)(1)(A)(i) allows courts to reduce "unusually long sentences." *See* 88 Fed. Reg. at 28,258. The Senate Judiciary Committee opined that the "unusual cases in which the eventual reduction in the length of a term of imprisonment" would be "justified by changed circumstances" might include "cases of severe illness" or "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence." Senate Report at 55. In context, the passage reflects that Congress anticipated that "changed circumstances" warranting a sentence reduction include things like aging, health issues, or changes in family circumstances that might occur while an offender is serving a long sentence *Id.* The passage shows that Congress understood Section 3582(c)(1)(A) requires an offender to prove some other "extraordinary and compelling circumstances," apart from simply the existence of a long sentence. *Id.*

On April 27, 2023, the Commission submitted its proposed Guidelines amendments to Congress. Because Congress did not act to modify or disapprove of the amendments, they became effective on November 1, 2023. 88 Fed. Reg. at 28,254; *see* 28 U.S.C. § 994(p).

## IV.  ANALYSIS

### A.  *Exhaustion*

Before an offender can seek relief in federal court, the offender must first request compassionate release from the warden of the facility where the offender is housed. In his motion, defendant makes no mention of seeking relief from the warden of his facility

11

in connection with the arguments he now makes before this Court. True, defendant has previously sought compassionate release from the warden on some of the grounds he raises here (sentencing disparity, efforts at rehabilitation, etc.), but he has not shown that since the amendment to the compassionate release Guidelines provision, upon which he relies so heavily here, that he has sought relief from the warden on that same ground. Rather, defendant turns immediately to the merits of his argument.

The government, however, has provided the Court with documentation showing defendant exhausted his administrative remedies and concedes he has. (Docs. 217-1; 217-2, at 1-5; 220, at 17). Accordingly, the Court will proceed to the merits of defendant's argument.

### B.    *Unusually Long Sentence*

Defendant's first argument for compassionate release is that the Court imposed an "unusually long sentence" on him, under Guidelines Section 1B1.13(b)(6). (Doc. 214, at 13-15). Defendant argues that his sentence is "unusually long" as compared to "the average sentence imposed [in 2021] for a federal bank robbery charge," even for those also charged with Section 924(c) offenses, longer than what was imposed for bank robbery in 1989, and longer than the average federal sentences for murder in 2022. (*Id.*, at 13). Defendant also argues "there have been three changes in the law that have produced a 'gross disparity' between the sentence Crandall is serving and the sentence that would likely be imposed under current law." (*Id.*, at 14). These include the elimination of the enhanced 25-year sentence for second or subsequent Section 924(c) convictions, judicial decisions that no longer recognize defendant's prior convictions as predicate offenses for the career offender guidelines, and a 2017 Supreme Court decision that found courts may impose a one-day sentence when a defendant faces mandatory consecutive sentences for multiple Section 924(c) convictions. (*Id.*, at 14-15). The government urges that the Commission overstepped its authority enacting Section

1B1.13(b)(6) because it conflicts with Section 3582(c)(1)(A)'s prohibition against modifying a term of imprisonment once it has been imposed, considers nonretroactive changes in laws, and violates the separation of powers doctrine. (Doc. 220, at 20-38).

As noted, prior to the enactment of Section 1B1.13(b)(6), the Eighth Circuit Court of Appeals held that a nonretroactive change in law regarding sentencing "whether offered alone or in combination with other factors, cannot contribute to a finding of 'extraordinary and compelling reasons' for a reduction in sentence under § 3582(c)(1)(A)." *Crandall*, 25 F.4th at 586. It bears repeating that, in reaching that conclusion, the court observed:

> The views of a present-day Congress, like those of a present-day sentencing judge, about the appropriate punishment for a present-day offense do not establish an "extraordinary and compelling reason" for reducing a sentence imposed years ago. The compassionate release statute is not a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy."

*Id.*

After the Eighth Circuit's decision in *Crandall*, the Supreme Court issued an opinion in *Concepcion v. United States*, 597 U.S. 481 (2022), in which a defendant sought a reduced sentence under Section 404(b) of the First Step Act, which authorizes district courts that imposed a sentence for certain covered offenses to "impose a reduced sentence . . . as if sections 2 and 3 of the Fair Sentencing Act [of 2010] . . . were in effect at the time the covered offense was committed." *Id.* at 488 (quotation omitted). The defendant in *Concepcion* was eligible for Section 404(b) relief, but the district court denied relief because it found it could not consider intervening changes of law or fact after the initial sentencing. *Id.* at 486-87. The Supreme Court reversed, concluding that the broad discretion of federal courts "to consider all relevant information at an initial

13

sentencing hearing . . . also carries forward to later proceedings that may modify an original sentence." *Id.* at 491.

The Eighth Circuit Court of Appeals has since found that *Concepcion* did not explicitly or implicitly overrule *Crandall*. "*Concepcion* does not bear on the threshold question whether any given prisoner has established an 'extraordinary and compelling reason' for release." *United States v. Rodriguez-Mendez*, 65 F.4th 1000, 1003-04 (8th Cir. 2023) (quotation marks and citation omitted). As the Eighth Circuit Court of Appeals explained,

> *Concepcion* concerned what district judges may consider in exercising their discretion to grant or deny a sentence reduction. No doubt the Court's reasoning would apply when a motion for compassionate release establishes an extraordinary and compelling reason for relief other than a nonretroactive change in the law, such as the defendant's medical condition, age, or family circumstances, and the court is exercising its discretion to grant relief. But *Concepcion* is irrelevant to the threshold question of whether [a defendant] has shown an 'extraordinary and compelling reason' for [Section] 3582(c)(1)(A) relief.

65 F.4th at 1004 (quotation marks and citation omitted).

In *Rodriguez-Mendez*, the Eighth Circuit Court of Appeals also considered the apparent impact of the then-pending 2023 Guidelines amendments, specifically the amendments at Guidelines Sections 1B1.13(b)(6) and 1B1.13(c), and concluded that those amendments would not change its reasoning in *Crandall*:

> It thus appears that the Commission proposes to adopt (or to express more clearly) that nonretroactive changes in sentencing law may not establish eligibility for a [Section] 3582(c)(1)(A) sentence reduction, as we held in *Crandall*, but may be considered in exercising a court's discretion whether to grant compassionate release relief to an eligible defendant, consistent with the Supreme Court's decision in *Concepcion*.
>
> For these reasons, we conclude that *Crandall* remains controlling Eighth Circuit law that is binding on our panel.

14

*Rodriguez-Mendez*, 65 F.4th at 1004.

The Court of Appeals' reading of the now adopted Section 1B1.13 appears overstated because the language is more nuanced. True, Section 1B1.13(c) appears to generally assert that nonretroactive changes in the law may not establish eligibility for compassionate release, but that same section carves out an exception. The first dependent clause of Section 1B1.13(c) states "Except as provided in subsection (b)(6)," and then goes on to prohibit consideration of nonretroactive changes in the law in any other respect.

The exception under Subsection (b)(6) allows consideration of nonretroactive changes in the law when the claim is that an offender received an "unusually long sentence." But then Section (b)(6) provides an exception to the exception, by exempting nonretroactive changes to the Guidelines. It states:

> a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed . . ..

Thus, reading Section 1B1.13(b)(6) together with Section 1B1.13(c), it appears that the Commission is saying that a court may consider some nonretroactive changes in the law, but not others, and only when claiming an unusually long sentence as a ground for relief.

The Commission's approach to compassionate release for unusually long sentences is unprincipled, inconsistent, and unreasonable. In an effort to create a ground for compassionate release for unusually long sentences, and yet still comply with Section 1B1.10 and the Supreme Court's decision in *Dillon v. United States*, 560 U.S. 817 (2010), the Commission barred consideration of nonretroactive changes to the Guidelines. Paradoxically, though, the Commission would allow courts to consider changes in the law that Congress could have, but chose not to, apply retroactively.

Although Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction," 28 U.S.C. § 994(t), that delegation of authority "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). An agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 58 (2011) (internal quotation marks omitted); *see Batterton*, 432 U.S. at 428. An agency cannot adopt an impermissible reading of the statute—i.e., a reading that exceeds the gap left by Congress. *See Mayo Found.*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428.

Here, the Commission has done just that. It has purported to authorize individual judges to apply retroactively laws that Congress has intentionally chosen not to apply retroactively, while carving out nonretroactive changes to the Guidelines. A principled approach would either authorize compassionate release based on all nonretroactive changes in the law, or none at all. It is unprincipled and inconsistent to adopt an approach that allows compassionate release based on some, but not all, nonretroactive changes to the law.

Section 1B1.13(b)(6) also violates the Separation of Powers Doctrine, which requires that one branch of government not impair another branch in the performance of its constitutional duties. Section 1B1.13(b)(6) impairs Congress's determination of what changes in sentencing laws it deems should apply retroactively. It is for Congress, not the courts, to determine whether to apply a change in a sentencing statute prospectively or retrospectively. To purportedly authorize judges to override the legislature's decision violates the separation of powers.

In short, the Court finds that the Commission does not have the authority to circumvent Congress in authorizing compassionate release based on nonretroactive changes in the law. Here, defendant claims his sentence is "unusually long" because

16

Congress amended the sentencing law as to the application of successive Section 924(c) sentences. Congress chose not to apply that change retroactively. The Commission overstepped its authority in purporting to authorize officers of the judicial branch to override that decision. Thus, to the extent defendant seeks compassionate release based on nonretroactive changes to the law, the Court denies the motion on that ground.

Defendant also seeks compassionate release based on a change in what is now considered a predicate offense for purposes of career offender status. That argument fails. Section 1B1.13(b)(6) does not apply to defendant's argument that there is a gross disparity between the sentence he received and the sentence he would receive today because now he would not be classified as a career offender. Section 1B1.13(b)(6) purports to apply to "a change in the law." As the Eighth Circuit Court of Appeals has already pointed out, *Mathis v. United States*, 579 U.S. 500 (2016) "did not change the law; it was an interpretation of existing law." *Crandall*, 25 F.4th at 586 (citing *Martin v. United States*, 904 F.3d 594, 597 (8th Cir. 2018)). Thus, the Court denies the motion on that ground.

The same is true of defendant's argument about a 2017 Supreme Court decision that found courts may impose a one-day sentence when a defendant faces mandatory consecutive sentences for multiple Section 924(c) convictions. That is not a change in the law. That was an interpretation of existing law. Thus, the Court denies the motion on that ground as well.

Even if the Court did not find Section 1B1.13(b)(6) exceeds the Commission's authority and violated the Separation of Powers Doctrine, the Court would find Section 1B1.13(b)(6) is unworkably vague. The Commission would have a court determine if a sentence is "unusually long" by determining if there was a "gross disparity" between the sentence the offender received and the sentence the offender would receive today. Setting aside for the moment the monumental problems with considering nonretroactive changes

in the law in determining what sentence an offender would receive today, the terms here lack any form of definition and invite arbitrary application. The Commission has not defined "gross disparity." Is a disparity gross if the sentence was 10 percent more than what the offender would receive today? Or does it only become "gross" if it passes the 20 percent mark? Or does it gross out a judge only if the disparity is more like 30 percent? Or, like determining if something is obscene, is a court just supposed to know it when it sees it? *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (J. Stewart, concurring). Perhaps the Commission should have used the phrase "obscene disparity" to make the unreasonable demand it is making of judges more absurdly obvious.

Thus, to the extent defendant seeks compassionate release based on the ground he received an "unusually long sentence," the Court denies the motion. In short, the Court finds Guidelines Section 1B1.13(b)(6) to be inconsistent with Section 1B1.13(c) and contrary to the Eighth Circuit's decision in *Crandall*. Section 1B1.13(b)(6) exceeds the Commission's authority and violates the Separation of Powers Doctrine. It is also unworkably vague. It invites arbitrary justice.

C. **Section 1B1.13(b)(5)—Other Reasons**

Defendant also argues that the Court should grant him compassionate release under Subsection (b)(5), which provides that a court may grant compassionate release for "any other circumstance or combination of circumstances that . . . are similar in gravity to those described in paragraphs (1) through (4)." USSG §1B1.13(b)(5). Paragraphs (1) through (4) pertain, as noted, to medical circumstances and age of a defendant, whether the defendant is the sole available caregiver for a family member, and whether a defendant is a victim of abuse while incarcerated. In his brief in support of his motion for compassionate release, defendant appears to ask the Court to apply subsection (b)(5) as part of its analysis under subsection (b)(6). (Doc. 214, at 12, 15). To the extent defendant is arguing under subsection (b)(5) he is entitled to compassionate release

because of his long sentence, by its plain language that subsection does not apply to the considerations under subsection (b)(6), and so the Court rejects that argument.

At oral argument, defendant emphasized as part of his argument under subsection (b)(5) that his sentence was disparate from all his codefendants. *See also* Doc. 214, at 8). The Eighth Circuit Court of Appeals has made it clear that when the Court is charged with imposing a sentence to avoid unwarranted sentencing disparities, *see* 18 U.S.C. § 3553(a)(6), Congress was referring to national disparities, not differences between co-conspirators. *United States v. Baez*, 983 F.3d 1029, 1044 (8th Cir. 2020). Thus, the Court rejects this as a ground for compassionate release under subsection (b)(5). Also, how defendant was sentenced as compared to other codefendants is not a matter similar in gravity to a serious medical condition, advanced age, the need to care for a dependent, or being the victim of abuse while incarcerated.

As a further part of his argument under subsection (b)(5), defendant cites to his young age at the time of the offense and his efforts at rehabilitation. (Doc. 214, at 16-17). Presumably, defendant is asserting that his young age at the time of the offense is similar in gravity to an advanced age in prison. The Court finds it is not. Age at the time of offense is fundamentally different from whether advanced age in prison may give rise to a need for compassionate release. The former has to do with an offender's mindset when committing a crime. The latter has to do with an offender's ability to function day-to-day in a prison setting when the offender is frail and elderly.

Regardless, the Court finds defendant's age at the time of offense was not so young as to be a ground for compassionate release. Defendant was 25 years old at the time he committed the offenses. (*Id.*, at 5). Defendant cites studies that suggest that portions of the brain responsible for self-control and judgment "continue to develop into a person's mid-to-late twenties." (*Id.*, at 16). The authorities defendant relies on, however, focus on offenders under the age of 25. (*Id.*, at 17 nn.14, 15). At 25 years of age, he was old

19

enough and mature enough to fully comprehend the wrongfulness of his conduct and the consequences of his conduct, both on his victims and for himself if arrested. Indeed, defendant had previously been convicted as an adult of other burglaries and thefts for which he was sentenced to periods of incarceration, but had no juvenile convictions. (Doc. 168, at 15-17). Moreover, nothing about the manner in which he and the others committed the robberies suggested he was acting out of control or engaging in rash, spur of the moment decision-making. To the contrary, the manner in which defendant committed the offenses show reflection and planning inconsistent with a juvenile acting irrationally and impulsively. Thus, the Court denies defendant's motion for compassionate release on the ground of age at the time of offense.

The only remaining ground defendant raises for compassionate release is his efforts toward rehabilitation. (Doc. 214, at 18-20). It does appear defendant has made significant strides toward rehabilitation, and the letters submitted on his behalf show he has a strong support system. Nevertheless, "rehabilitation . . . is not, by itself, an extraordinary and compelling reason" justifying compassionate release; the United States Sentencing Commission and Congress indicate rehabilitation may be considered with other factors. *See* USSG §1B1.13(d); 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Having found no other ground justifying compassionate release, the Court denies defendant's motion on this ground as well.

## V.    CONCLUSION

The Court acknowledges that it imposed a very harsh sentence on defendant in 1990. The Court also recognizes that defendant committed very serious and violent crimes that led to that sentence. In 1990, a judge applied the sentencing laws as they then existed and, after careful consideration, imposed a sentence that judge found appropriate at the time. Since then, Congress has amended sentencing laws, but none it

found appropriate, in its considered judgment, that should be applied retroactively as to defendant. Likewise, the Sentencing Commission has since adopted amendments, none of which applied retroactively to defendant. It is not for this Court to use the compassionate release statute, a narrowly-tailored statute designed to provide relief when an offender has identified extraordinary and compelling reasons justifying release from prison, to arbitrarily decide whether, under today's standards, the sentence seems unusually long or somehow unfair. It is not the place for the judicial branch to apply retroactively changes in sentencing laws that Congress chose not to apply retroactively.

Congress abolished parole in 1984, and in doing so, gave weight to the interest in finality of judgment. Congress has not re-instated the parole system. But Section 1B1.13(b)(6) would place judges in the position of being one-person parole boards authorized to revisit the judgment imposed by an earlier judge in light of vague principles and opinions. It would authorize judges to second guess the decisions of earlier jurists, considering some nonretroactive changes in the law, but not others. It invites wholesale arbitrary reconsideration of sentences in a manner that violates the principle of finality in sentencing reflected in Title 18, United States Code, Section 3582(c)(1)(A). It is an unprincipled and unreasonable expansion of what Congress authorized in allowing courts to grant compassionate release.

Perhaps it is time for Congress to consider reimplementing a parole system that would allow reconsideration of sentences previously imposed when, in light of changing times, such sentences may appear too harsh. But if Congress did so, a parole board would be part of the executive branch of government answerable to the people through the popular vote. Vesting individual judges, appointed for life, the power of acting as one-person parole boards is not what Congress authorized when it crafted a narrow avenue of extraordinary relief through the compassionate release statute.

21

If Congress reinstated parole, and were this Court to sit on such a parole board, it might very well vote to grant defendant parole. But Congress has not. And this Court is not a parole board.

For these reasons, defendant's motion for compassionate release (Doc. 213) is **denied**.

**IT IS SO ORDERED** this 5th day of March, 2024.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa